**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION**

| | |
|---|---|
| WILLIAM ALLEN, an individual; | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) JURY TRIAL DEMANDED |
| CAG2 OF TUSCALOOSA LLC, d/b/a | ) |
| CARLOCK CHRYSLER DODGE JEEP | ) |
| RAM of TUSCALOOSA, an Alabama | ) Case No.: |
| Limited Liability Company; | ) |
| TLC OF FRANKLIN, INC, a Tennessee | ) |
| Corporation; | ) |
| KELLIE MITCHELL, an individual; | ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

## I.  INTRODUCTION

On or about June 23, 2018, Plaintiff William Allen purchased a 2018 Jeep

Cherokee, VIN XXXXXXXXXXXX95752, from Defendant CAG2 of Tuscaloosa

LLC, which was doing business as Carlock Chrysler Dodge Jeep Ram of Tuscaloosa

(hereinafter "Carlock").

Carlock advertised and sold the vehicle as a "new" car. Carlock also made written

disclosures of the vehicle's mileage, pursuant to 49 U.S.C. §32705, as having been

driven only 24 miles. Neither of these representations were true. Carlock had

previously sold the vehicle to a non-party individual who had registered the vehicle with the Alabama Department of Revenue, obtained a tag, and driven the vehicle for over a month – all of this occurred prior to the time of sale to William Allen.

Carlock and employees of TLC of Franklin, Inc., including Kellie Mitchell, knowingly violated state and federal statutes intended to document and preserve the mileage of the vehicle. All Defendants were active participants in a scheme to make false representations that the vehicle was a "new" car.  Such practice defrauded Plaintiff William Allen as well as every future owner of the vehicle.

Plaintiff William Allen requests this Court put an end to this deceptive and illegal conduct, and award Plaintiff damages as set forth herein, and otherwise as the Court may deem appropriate.

## II. JURISDICTION

1. This is not a diversity action. Jurisdiction is proper under 28 U.S.C.A. §1331 and given to district courts for "all civil actions arising under the Constitution, laws, or treaties of the United States." Such federal question jurisdiction may arise from the initial pleading or from subsequent motions, pleadings, or other papers where the federal question is first able to be ascertained.  42 U.S.C.A. 1446(b).

2.  Federal question jurisdiction arises from the initial pleading and Plaintiff's assertions for violations of the Federal Odometer Act, 49 U.S.C. §32701 *et seq*.

3.  This Court has supplemental jurisdiction over related Alabama state law claims asserted in this action pursuant to 28 U.S.C. §1367.

4. A jury trial is demanded pursuant to the 7th Amendment of the Constitution of the United States, for all causes triable to a jury.

## III. VENUE

5.  Venue in this District is proper pursuant to 28 U.S.C. §1391 (b) and (c) because Defendants conduct business and/or maintain their principal place(s) of business in the Northern District of Alabama, and the wrongful conduct out of which Plaintiff's claims arise occurred within the Northern District of Alabama.  Defendants are found, do business in, and transact business, within this District.  Additionally, Plaintiff resides within this district.

## IV.   PARTIES

6.  Plaintiff **William Allen** (hereinafter "Allen") is an individual residing in Green County, Alabama.

7. Defendant **CAG2 of TUSCALOOSA LLC**, doing business as CARLOCK CHRYSLER DODGE JEEP RAM of TUSCALOOSA and also doing business as CARLOCK of TUSCALOOSA, hereinafter referred to as "Carlock," "Dealership," and/or "Respondent", is a Limited Liability Company, engaged, *inter alia*, in the sale of new and used automobiles at 550 Skyland Blvd E., Tuscaloosa, AL, 35405.

8. Defendant **TLC of FRANKLIN, INC.**, hereinafter referred to as "TLC," is or was doing business as "Carlock Motorcars" and other Carlock automobile dealerships, is a Tennessee Corporation, engaged *inter alia*, in the sale of new and used automobiles. Through information and belief, Carlock was part of TLC's "Carlock Automotive Group." As such, TLC provided Carlock with oversight and management services, as well as providing Carlock with employees and agents who also worked at other Carlock Automotive Group dealerships.

9. Defendant **KELLIE MITCHELL** is an individual believed to be a resident of Tennessee, who was, through information and belief, an employee or agent of TLC and who participated in the subject action while acting as an employee or agent of Carlock and TLC at the time of the subject transaction.

10. In doing the acts and omissions alleged in this Complaint, Allen alleges that Carlock and other Defendants conspired with and among other individuals and entities whose names are currently unknown, to engage in the conduct made the subject of this Complaint, and act as agents of one another, pursuant to a common goal or scheme, to carry out the wrongful conduct, and to conceal that conduct.

11. As the principal of its employees and agents, all Defendants are liable to Allen for any and all damages suffered by Allen as a result of the unlawful acts of the Defendants' agents and employees.

## V. FACTUAL ALLEGATIONS

12.    On or about June 23, 2018, Allen went to Carlock's dealership as part of his effort to purchase a vehicle for personal transportation. When he arrived at the dealership, Allen was shown a 2018 Jeep Cherokee (the "Vehicle"), VIN XXXXXXXXXXXX95752, by employees and/or agents of the Carlock dealership, including, but not limited to Carlock's salesman named Riley Brooks.

13.    The vehicle was listed, described, and sold as a 'new" vehicle. Allen was told by Carlock, including its salesman, Riley Brooks, that the Jeep vehicle was a "new" vehicle, and had been driven only 24 miles.

14.    After looking over the vehicle, Allen agreed to purchase the vehicle, and executed agreements for the sale and financing of the vehicle. The sales documents produced by Carlock, and signed by Allen, salesman Riley Brooks, finance manager Ciara Bradley, and other employees and agents of Carlock, state the vehicle was "new" and had a mileage of 24 miles.

15.    On or about June 23, 2018, Ciara Bradley, as an agent or employee of Carlock, prepared and signed an "ODOMETER DISCLOSURE STATEMENT" stating 24 "actual miles" on the vehicle.

16.    Tracy Pittsenbarger, who was an employee or agent of Carlock, signed, as an agent or employee of Carlock, the reverse side of a State of Alabama Motor Vehicle

Title stating the subject vehicle had an odometer reading of 24 actual miles. William Allen's signature signed on the reverse side of the title is a forgery of his signature.

17.    Carlock and Carlock's employees, including but not limited to Defendants named herein, all specifically represented to Allen that vehicle was "new" and the vehicle had only been driven 24 miles. Allen was unaware of any mileage discrepancy when he purchased the vehicle from Carlock. No mileage discrepancy was identified on any of the sales documents provided to Allen. Allen relied on Carlock and Carlock's employees' written and oral representations as to the vehicle being "new" and having 24 miles when Allen purchased the vehicle.

18.    Unbeknownst to Plaintiff William Allen, the 2018 Jeep Cherokee, VIN XXXXXXXXXXXX95752 sold to Allen on or about June 23, 2018, was not new and had been driven much more than 24 miles. In fact, Carlock had sold the vehicle at least twice before Allen purchased the vehicle.

19.    Through information and belief, on or about March 31, 2018, Carlock sold the vehicle to an individual.

20.    On or about April 19, 2018, Carlock resold the vehicle to Leon Gooden and Debra Hill. According to Alabama Department of Revenue records, on or about May 15, 2018, the Alabama Department of Revenue issued Alabama Vehicle Title no. 54745753 for the subject vehicle in the name of Leon Gooden and Debra Hill. Through information and belief, on or about May 18, 2018, Hill and Gooden

registered the vehicle in Hale County with the Alabama Department of Revenue and were issued a tag for the vehicle.

21.   At the time of the June 23, 2018 sale to Allen, Carlock knew that Hill and Gooden had registered the vehicle and that a title had been issued. In fact, on June 23, 2018, the Jeep vehicle was titled to Hill and Gooden, not Carlock or TLC. Instead of selling the vehicle to Allen as a "used" car, Carlock knowingly and deceptively sold the vehicle to Allen as a "new" car.

22.   On or about August 6, 2018, Carlock requested Chrysler Capital, which was recorded as the lienholder on the Hill/Gooden vehicle title, return the vehicle title to Carlock.

23.   On or about August 11, 2018, nearly two months after Carlock sold the vehicle to Allen, Carlock's employee Sam Chandler, a/k/a "Arlene Chandler", a/k/a "A. Edgeworth", requested the Alabama Department of Revenue void the Hill/Gooden title, falsely stating in an email to the Alabama Department of Revenue:

> "We have the title to a new vehicle that was titled in error.  Mr. Gooden did not purchase this vehicle and it never left the premises.  My question is, can this title (#54745753) be voided so we can order a duplicate MSO to be able to sell the vehicle as new?"

24. On or about August 17, 2018, Carlock's employee Sam Chandler sent an email to Leon Gooden asking Hill and Gooden to turn the tag back in to the Hale County Tag Office "so the new owner can get it registered."

25.    On or about November 19, 2018, Kellie Mitchell signed a state of Alabama form MVT 5-1E "Application for Certificate of Title" as an agent or employee of Carlock, stating the mileage was "24." Through information and belief, Kellie Mitchell was an employee or agent of TLC at the time she signed the described application for title, and Ms. Mitchell was also working as an agent or employee of Carlock. William Allen's signature signed on the title application is a forgery of his signature.

26.    Despite their prior knowledge regarding the subject vehicle, Carlock, TLC and Mitchell intentionally hid its, their, and her knowledge from Allen, instead, representing to him that the car was "new" and had been driven only 24 miles. Carlock, TLC, and Mitchell intentionally hid and suppressed from Allen the fact that the vehicle had been previously sold and that an Alabama title had been issued on the vehicle.  Carlock and TLC, including through their shared agent Kellie Mitchell, hid and suppressed the November 11, 2018 Alabama application for certificate of title from Allen by forging his signature on the application and submitting it to the Alabama Department of Revenue without Allen's knowledge.

27.    Through this conduct, Carlock and TLC sold the vehicle to Allen at a higher price than its actual value by failing to represent the true mileage of the vehicle and misrepresenting the actual mileage on the vehicle. Had Defendants noted the actual mileage on its advertisements, sales documents, and the odometer disclosures, and informed Allen of the actual mileage, Allen would not have purchased the vehicle or would have only purchased the vehicle at a substantially lower price.

28.  As a proximate result of the conduct of Defendants, Allen was caused to suffer loss of monies, loss of value of the vehicle, incidental and consequential damages, mental anguish and anxiety. Allen's actual damages include, but are not limited to: a) increased purchase costs; b) increased taxes; c) increased finance costs; d) increased insurance costs; e) increased repair costs; g) as additional costs, plus attorney's fees.

## VI. CAUSES OF ACTION

### COUNT ONE:   VIOLATIONS OF THE FEDERAL ODOMETER ACT

29.    Allen hereby incorporates and adopts each of the above and foregoing allegations and material averments as if fully set forth herein.

30.  As part of its routine course of business, and as mandated by federal and state law, including the Federal Odometer Act, codified at 49 U.S.C. 32701 *et seq*, automobile dealerships such as Carlock and TLC, and employees, members, and

agents of said dealerships, including, but not limited to Defendants named herein, provide purchasers of the automobiles with an "Odometer Disclosure Statement" certifying the accuracy of the odometer as well as the mileage on the vehicle at the time of transfer.

31. Carlock and its employee or agent Ciara Bradley certified the mileage on an "ODOMETER DISCLOSURE STATEMENT" which stated that the vehicle mileage was 24 miles on June 23, 2019, and that the odometer was accurate.

32. Carlock and its employee or agent Tracy Pittsenbarger certified the mileage on an odometer disclosure statement on the Alabama Motor Vehicle Title which stated that the vehicle mileage was 24 miles on June 23, 2019 and the odometer was accurate.

33. Carlock, TLC and their employee or agent Kellie Mitchell certified the vehicle's mileage was 24 miles on the state of Alabama form MVT 5-1E "Application for Certificate of Title" on November 19, 2018.

34. The vehicle's actual mileage at the time of the sale to Allen is unknown and through information and belief, was more than two thousand miles due to the prior sales of the vehicle.

35. The odometer disclosures made by Carlock, TLC, Ciara Bradley, Kellie Mitchell, and Tracy Pittsenbarger violated 49 U.S.C. §32705 "Disclosure requirements on transfer of motor vehicles." 49 U.S.C. 32705(a) requires that (A)

the cumulative mileage on the odometer is disclosed, and (B) any discrepancy in the odometer reading be disclosed. The odometer disclosures and statements created and executed by Carlock, TLC, and Mitchell were false and understated the mileage by about 2,000 miles, without any indication of discrepancy.

36.    Defendants' odometer disclosure stating the mileage and representations falsely describing the vehicle as a "new" vehicle are also reflected on Carlock's sales documents made part of the Allen transaction.

37.    By its conduct as set forth herein, Carlock, TLC, Mitchell, with intent to defraud, all certified mileage that was known, or should have been known, by these Defendants to be inaccurate and/or false. Due to these defendants' fraudulent conduct, Allen was induced to purchase the vehicle.

38.    Defendants violated federal laws that require them to accurately disclose the odometer reading at the time of each sale.

39.  Carlock, TLC, their agents and employees, Mitchell, and other Defendants whose identities are unknown to Plaintiff at this time, by its, their, his and her conduct, and acting in concert and/or individually, willfully, and with the intent to defraud, violated the Federal Odometer Act in at least one or more of the following respects:

> a.  In making odometer disclosures, Defendants made false statements on the disclosure, and/or gave false statements to a transferee, Plaintiff

William Allen, in violation of 49 U.S.C. §32705(a) and 49 C.F.R. §580.4;

b. Defendants failed to provide a correct disclosure to Allen, pursuant to 49 U.S.C. §32705;

c. Defendants altered, or caused to be altered, the odometer of the automobile with the intent to change the number of miles indicated;

d. Other violations of the Federal Odometer Act, or a regulation prescribed or order issued under the Act;

e. In all matters, Defendants' actions and representations were made with intent to defraud.

40. As a result of the above violations of the Federal Odometer Act, Defendants are liable to Allen under 49 U.S.C. § 32710 for the greater of three-time actual damages or $10,000.00, plus attorney's fees and costs.

41. Allen prays that the Court will award statutory damages as outlined above, as well as compensatory damages in an amount a jury deems appropriate to compensate Allen for his actual damages, loss of monies, incidental and consequential damages, mental anguish, emotional distress, attorney's fees and costs of this proceeding as well as punitive damages to deter such conduct in the future.

## COUNT TWO:  FRAUD, MISREPRESENTATION, DECEIT

42.   Allen hereby incorporates and adopts each of the above and foregoing allegations as if fully set forth herein.

43.   On June 23, 2018 through to the present date, while Allen was at Carlock's dealership, Carlock, TLC, Riley Brooks, Ciara Bradley, Kellie Mitchell, and Tracy Pittsenbarger knowingly and intentionally represented to Allen and the public at large, that the 2018 Jeep made the subject of this action was a "new" car and had been driven only 24 miles at the time of advertisement, sale, and transfer, to Allen on June 23, 2018.

44.   The sales documents produced by Carlock and signed by Plaintiff William Allen, Riley Brooks, Ciara Bradley, and other employees and agents of Carlock and TLC state the vehicle was "new" and had a mileage of only 24 miles.

45.   Kellie Mitchell, acting as an agent of both TLC and Carlock, signed the state of Alabama form MVT 5-1E "Application for Certificate of Title", stating the mileage was "24." William Allen's signature on the application is a forgery of his signature

46.   Ciara Bradley, as an agent or employee of Carlock prepared and signed an "ODOMETER DISCLOSURE STATEMENT" stating 24 "actual miles" on the vehicle.

47.   Tracy Pittsenbarger signed, as an agent or employee of Carlock, on the reverse side of a State of Alabama Motor Vehicle Title stating the vehicle had an odometer

reading of 24 actual miles. William Allen's signature on the reverse side of the title is a forgery of his signature.

48.     Through these misrepresentations, non-disclosures, suppressions, and/or omissions of the actual title and mileage status and condition of the vehicle, Carlock, TLC, Riley Brooks, Ciara Bradley, Kellie Mitchell, and Tracy Pittsenbarger caused Allen to pay a higher purchase price for the vehicle, suffer other costs and damages, and other incidental and consequential damages, to his detriment.

49.     Said representations were false. Carlock, TLC, Riley Brooks, Ciara Bradley, Kellie Mitchell, and Tracy Pittsenbarger knew they were false at the time they were made and either: a) intentionally and willfully made said representations; b) recklessly or negligently made said representations, thereby causing Allen to reasonably rely upon them; or, c) innocently or mistakenly made said representations all in such a way to cause Allen to reasonably rely upon them.

50.     Allen reasonably relied upon said representations by purchasing the vehicle. Allen also reasonably relied upon these representations by incurring expenses and costs consistent with exercising ownership rights in the vehicle, and making payments on the Vehicle.

51.     As a proximate result of the conduct of the Defendants, Allen was caused to suffer loss of monies, incidental and consequential damages, including but not limited to: a)  Increased purchase costs; b) Increased taxes; c) Increased finance

costs; d) Increased insurance costs; e) Increased repair costs; f) As well as additional costs, plus expenses and attorney's fees.

52.    Allen prays that the Court will award damages in an amount a jury deems appropriate to compensate Allen for his actual damages including loss of monies, incidental and consequential damages, mental anguish, emotional distress, and attorney's fees and costs of this proceeding as well as punitive damages to deter such conduct in the future.

## COUNT THREE:  WANTONESS/NEGLIGENCE/RECKLESSNESS

53.    Allen hereby incorporates and adopts each of the above and foregoing allegations and material averments as if fully set forth herein.

54.    All Defendants owed Allen, and each and every future purchaser of the subject vehicle, and the general public at large, a duty not to be wanton/negligent in their conduct both before and after the sale of the vehicle.  Defendants owed Allen a duty of care and professionalism in advertising the subject vehicle, and the carrying out of sales and services. All Defendants owed Allen a duty to make truthful representations as to the vehicle. Defendants owed Allen a duty in not engaging in or allowing its agents to engage in the wrongful practices herein alleged, in not misrepresenting, suppressing or concealing such activities, or enabling its agents to do so, and violate state and federal regulations and statutes, including, but not limited

to: (a) Uniform Certificate of Title and Anti-Theft Act Code of Alabama 1975 §32-8-1, *et seq;* and, (b) the Federal Odometer Act, 49 USC § 32701 *et seq*.

55.    As described herein, Defendants, singularly, in concert, and/or by and through its agents, employees, owners, members, managers and/or officers, willfully and wantonly violated the above state and federal statutes and regulations and/or ratified or adopted the conduct after the fact, which includes, but is not limited to, Defendants' representations to the public at large, including Allen, that the subject vehicle was a "new" vehicle and had been driven only 24 miles at the time of acquisition by Allen.

56.    Defendants owed Allen a duty not to be wanton, negligent and/or reckless in its conduct both before and after the sale of the vehicle, as described herein, including, but not limited to, the following conduct:

a.    Misrepresenting the sale of the Vehicle;

b.    Misrepresenting the mileage on the vehicle;

c.    Misrepresenting the Vehicle was "new";

d.    Misrepresenting the vehicle had not been previously titled;

e.    Misrepresenting the vehicle had not been the subject of a prior sale;

f.    Breach of fiduciary duties owed to Allen;

g.    False advertising;

h.   Failing to comply with state and federal laws, including, inter alia, regulations regarding vehicle odometer disclosures.

i.   Other conduct inconsistent with Defendants' obligations and duties under the contract.

57.  Defendants' conduct constitutes negligent, wanton, reckless, and/or "negligence per se" breaches of the duties owed to Allen.  Such breaches arose out of the conduct of the Defendants, and those who acted in concert or conspiracy with it, or acted as its agents, servants or employees, while in the line and scope of its business, and its contractual and statutory duties to Allen in order to preserve and protect the financial interest of Defendants.

58.  By its, her, and their conduct, the Defendants breached said duties to Allen and were reckless, wanton, and/or negligent.

59.  As a proximate result of the conduct of the Defendants, Allen was caused to suffer loss of monies, mental anguish, incidental and consequential damages, including but not limited to: a) Increased purchase costs; b) increased taxes; c) Increased finance costs;  d) Increased insurance costs; e) Increased repair costs; f) Loss of value; g) As well as additional costs, plus attorney's fees.

60.  Allen prays that the Court award damages in an amount a jury deems appropriate to compensate Allen for his actual damages, loss of monies, incidental and consequential damages, damages, mental anguish, emotional distress, attorney's

fees, and costs of this proceeding as well as punitive damages to deter such conduct in the future.

**COUNT FOUR:**

**NEGLIGENT HIRING, TRAINING, SUPERVISION, AND RETENTION**

61.    The preceding paragraphs of this Complaint, and any additional factual averments set forth this Complaint, are repeated and incorporated by reference in this Count.

62.    Defendants Carlock and TLC owed Allen a duty of care and professionalism in the rendition of  services, in advertising goods for sale, in training and supervising its employees and agents to perform those services in full compliance with the laws of the State of Alabama and the Federal government, in not engaging in or allowing its employees and agents to engage in the wrongful practices herein alleged, in not suppressing or concealing such activities, or enabling its agents to do so, and in terminating or otherwise disciplining those employees and agents known to have violated company policies, state laws or regulations by engaging in the misconduct herein alleged, or employees and agents known to have suppressed material information or to have made material misrepresentations to Allen.

63.    Carlock and TLC owed duties to Allen in putting forth loyal, honest, and fair dealing employees and agents who act in compliance with Federal and State law, contractual, and other obligations that arise from the special or confidential

relationship between the parties, Alabama statutes and regulations governing the automotive industry, Carlock's superior knowledge of the automobile industry, and the duties of a designated agent for title transfers.

64.    Carlock and TLC are among those exclusively licensed by the State to provide title transfer services to vehicle purchasers.  Future purchasers of the automobile, including Allen, must rely on licensed professionals such as the agents of Carlock and TLC because they are the only group that can provide such services by law, and are purportedly acting on behalf of the Alabama Department of Revenue to assist in the proper transfer titles.

65.    Carlock and TLC breached its and their duties by negligently retaining employees and agents known to have violated state and/or Federal laws relating to the mandatory disclosures required at the time of vehicle purchases. These employees are known to have violated Carlock's stated company policies and procedures regarding the sale of automobiles, proper transfer of titles, and mandatory disclosures.

66.    Carlock and TLC's negligent retention of employees and agents known to have engaged in the misconduct described herein acted as ratification of such misconduct.

67.    Carlock and TLC, through its and their employees and agents, breached its and their duties owed to Allen, and such breaches arose out of the negligent or

wanton conduct of the Defendants, and those who acted in concert or conspiracy with it or acted as its agents, servants or employees, and in the line and scope of its and their business, and in carrying out its and their contractual and statutory duties, Allen in order to preserve, protect, and further the financial interests of Defendants.

68.     Carlock and TLC knew, or should have known, of the wrongful or fraudulent practices engaged in by its employees and agents, and knew, or should have known, that its own training, supervision and retention practices were inadequate to fulfill its obligation to protect the public from unscrupulous, dishonest, and deceptive practices by its agents and employees.

69.    Defendants Carlock and TLC knew, or should have known, that its policies and practices in training, supervising and retaining such employees were inadequate to prevent or detect the misconduct described herein, and such inadequate policies and practices were the actual and proximate cause of Allen's injuries described herein.

70.    Allen has incurred damages proximately caused by Defendants' breaches and negligence in training, supervising and retaining its employees.  As a proximate result of the conduct of the Defendants, Allen was caused to suffer loss of monies, mental anguish, incidental and consequential damages, including but not limited to: a) Increased purchase costs; b) Increased taxes; c) Increased finance costs; d)

Increased insurance costs; e) Increased repair costs; f) Loss of value; g) As well as additional costs, plus attorney's fees.

71.    Allen prays that the Court will award damages in an amount the Court deems appropriate to compensate Allen, for his loss of monies, and incidental and consequential damages, mental anguish and emotional distress, in an amount to be determined by a jury, as well as attorney's fees and costs of this proceeding, and punitive damages to deter such conduct in the future.

### COUNT FIVE:  BREACH OF EXPRESS WARRANTIES

72.    Allen adopts and re-alleges all of the material allegations and averments contained in the above and foregoing paragraphs as if fully set forth herein.

73.    Prior to the June 23, 2018 sale to Allen, Carlock offered express warranties as to the vehicle, including, but not limited to, that vehicle was "new," the mileage on the vehicle was 24 miles, that this mileage was the actual mileage, and that the disclosures contained on the sales and advertising documents were true and correct. As part of the sale, on the advertising, the "Bill of Sale," and the "ODOMETER DISCLOSURE" document, Carlock expressly warranted that the vehicle had only been driven 24 miles at the time of sale to Allen and was a "new" car.

74.    By its conduct, Carlock breached express warranties to Allen, including, but not limited to, those set forth in Code of Alabama § 7-2-312 and § 7-2-313.

75.   As a proximate result, Allen was caused to suffer loss of monies, mental anguish, incidental and consequential damages, loss of value to the vehicle, additional costs, legal costs, plus attorney's fees.

76.   WHEREFORE, PREMISES CONSIDERED, Allen requests that this court award damages in an amount appropriate to compensate him for his actual damages, loss of monies, incidental and consequential damages, emotional distress and mental anguish, in an amount to be determined by a struck jury, plus punitive damages, attorney's fees and costs of this proceeding.

## COUNT SIX:  FRAUDULENT SUPPRESSION/CONCEALMENT

77.   Allen adopts and incorporates all preceding paragraphs as if fully stated herein.

78.   When purchasing an automobile, buyers such as Allen must trust all person(s) and entities in the chain of title of the vehicle, including Carlock and TLC, to provide good-faith and truthful information on the title disclosures, during the title disclosure process, and to honestly handle its/their duties under applicable federal and state statutes, as well as the duties owed as a designated title agent for the State of Alabama. These duties are implied in the transaction and required by law.

79.    Carlock and TLC, as a routine practice in the process of executing odometer disclosure documents, hid and/or withheld important facts from Allen, including,

without limitation, the actual vehicle mileage, the fact that the vehicle was not new and had been previously registered, and Carlock and TLC's suppression of same.

80.    Allen was harmed when Carlock and TLC hid or withheld these important facts from Allen regarding the vehicle.  It was the intention of Carlock and TLC that these facts be secret, concealed, hidden, and undisclosed, in order that Carlock and TLC's scheme and pattern and practice of selling vehicles with false mileage certifications, rolled back odometers, and selling cars as "new" when they are actually "used," continue without detection, for the purpose of increasing profit. Carlock, TLC, and Carlock and TLC's agents and employees hid and suppressed the fact, during and after the transaction for the sale of the subject vehicle, that the vehicle was not a new vehicle and the real mileage was not as set forth on the disclosures, or as disclosed to Allen.  This was accomplished through Carlock and TLC's failure to show Allen the vehicle title, the forging of signatures, the misrepresentations of Carlock, TLC and Mitchell to Allen, as well as misuse and abuse of Defendants' status as designated title agents and breaches of Defendants' fiduciary duties to Allen.

81.  Carlock, TLC, and Mitchell had a duty to disclose these facts to Allen, as Carlock and TLC, and its and their agents, employees, officers, members, owners and/or managers, were automobile dealers, acting and appointed as designated title agents for the state of Alabama, and required to abide by state and federal laws.

There is an inherent disparity of knowledge between Allen and Defendants as to Carlock and TLC's treatment of the vehicle sale and of Carlock, TLC, and Mitchell's knowledge of the mileage and prior title.

82. The facts withheld by Carlock, TLC and Mitchell were material to Allen. Allen would not have executed the purchase and financing documents and purchased the vehicle, had he known that Carlock, TLC, Mitchell, and its and their agents, and/or its employees, had withheld these material facts from Allen.

83. Carlock, TLC, Mitchell, its agents, and/or its employees and the individuals named herein withheld these material facts to induce Allen to execute sales, titling, and financing documents, and purchase its vehicle for an unlawfully inflated sales price. Allen executed the sale without knowledge of these material facts because Defendants concealed such facts from Allen.

84. As a direct and proximate result of the fraudulent concealment by Carlock, TLC and Mitchell, and Defendants' agents and/or employees, Allen was caused to suffer loss of monies, incidental and consequential damages, including but not limited to: a) Increased purchase costs; b) Increased taxes; c) Increased finance costs; d) Increased insurance costs; e) Increased repair costs; f) Loss of value; g) Additional costs, plus attorney's fees.

85. Allen requests that this court award damages in an amount appropriate to compensate him for his damages, loss of monies, incidental and consequential

damages, emotional distress and mental anguish, in an amount to be determined by a struck jury, plus punitive damages, attorney's fees, and costs of this proceeding.

## COUNT SEVEN: BREACH OF CONTRACT

86. Allen hereby incorporates and adopts each of the above and foregoing allegations and material averments as if fully set forth herein.

87. On or about June 23, 2018, Carlock entered into a contract with Allen to sell the above described Vehicle to Allen.

88. Carlock expressly contracted with Allen to finance and sell to Allen a "new" vehicle that had been driven no more than 24 miles at the time of sale.

89. By its conduct, Carlock breached its contract with Allen.

90. As a proximate result, Allen was caused to suffer loss of monies, incidental and consequential damages, as well as severe mental anguish and emotional distress.

91. Allen prays that the Court will award damages in an amount a jury deems appropriate to compensate him for loss of monies, severe mental anguish and emotional distress, attorney's fees and costs of this proceeding, as well as punitive damages to deter such conduct in the future.

## COUNT EIGHT: BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY and WARRANTY OF TITLE

92.     Allen repeats each and every allegation contained in the paragraphs above and below and incorporates such allegations by reference.

93.     Carlock and TLC sold Allen a vehicle in violation of Alabama Code §§ 7-2-312 and 314 in that, *inter alia*, the vehicle would not pass without objection as a "new" vehicle with only 24 miles at the time of sale.

94.     As a proximate result, Allen was caused to suffer loss of monies, incidental and consequential damages, as well as severe mental anguish and emotional distress.

95.     Allen prays that the Court will award damages in an amount the Court deems appropriate to compensate Allen for his loss of monies, severe mental anguish and emotional distress and incidental and consequential damages suffered by him as a result of Carlock's conduct; award attorney's fees and costs of this proceeding, and punitive damages to deter such conduct in the future.

## VII.   RELIEF REQUESTED

Plaintiff William Allen requests this Court enter an award against the Defendants as follows:

1. Award Plaintiff compensatory damages, mental anguish damages, and all statutory, exemplary damages and equitable relief permitted by law;

2.  Award Plaintiff punitive damages as a result of Defendants' fraudulent, willful, wanton and unlawful conduct;

3.  Awarding Plaintiff all costs of prosecuting this action, together with interest and reasonable attorneys' fees;

4.  Award a permanent injunction, or any other injunctive relief deemed appropriate, preventing Carlock from acting as a designated title agent for the State of Alabama to process and transfer automobile titles until such time as its management and employees have corrected false information submitted to the Alabama Department of Revenue, and been adequately trained and made to comply with all aspects of its duties as a designated title agent for the State of Alabama, the Federal Odometer Act and the Uniform Certificate of Title and Anti-Theft Act.

Respectfully submitted,

Thomas C. Donald, ASB-6795-A47D
Michael E. Parrish, ASB-5747-S69M
Parrish & Donald
Alabama Car Lawyers, LLC
1707 29th Court South
Birmingham, AL 35209
Phone: 205 985 2309
Email: cdonald@alabamacarlaw.com
        mparrish@alabamacarlaw.com

**PLAINTIFF DEMANDS TRIAL BY STRUCK JURY**